UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RENJIE ZHAN,<br><br>    *Plaintiff*,<br><br>v.<br><br>WORLD BANK,<br><br>    *Defendant.* | No. 19-cv-1973 (DLF) |

**MEMORANDUM OPINION**

In the early 1990s, the World Bank helped the Chinese government fund construction of the Shuikou Hydroelectric Power Station (the "Shuikou Dam"). The project forced nearby villagers to resettle, and the Chinese government allegedly broke its promise to compensate those villagers. With this putative class action, Renjie Zhan sues the World Bank for its role in the project. Compl., Dkt. 1. Before the Court is the World Bank's Motion to Dismiss for lack of subject-matter jurisdiction and for failure to state a claim. Mot. to Dismiss, Dkt. 10. Because the Bank is immune from this type of suit under the International Organizations Immunities Act, the Court lacks subject-matter jurisdiction and will grant the Bank's motion.

**I.    BACKGROUND[1]**

The World Bank, which comprises two separate institutions, the International Development Association (IDA) and the International Bank for Reconstruction and Development (IBRD), "is an international financial institution" charged with "assisting the development of its

---

[1] In considering a motion to dismiss for lack of subject-matter jurisdiction, the Court accepts as true all of the Complaint's material allegations. *See, e.g., Muir v. Navy Fed. Credit Union*, 529 F.3d 1100, 1105 (D.C. Cir. 2008).

member nation's territories, promoting and supplementing private foreign investment, and promoting long range balanced growth in international trade." *Mendaro v. World Bank*, 717 F.2d 610, 611 (D.C. Cir. 1983). The United States joined the 140-member Bank in 1945. *See id.* The Bank's toolkit includes the ability to lend directly to member nations. *See id.* at 12.

In the "early 1990s," the Bank helped the Chinese government finance the Shuikou Dam with a direct loan. Compl. ¶ 5. As part of this construction project, the government identified areas that would become submerged once the dam was complete. *Id.* The village with the "most serious losses from the submersion" was a village called Xiadun. *Id.* at ¶ 8. "All farmland" and "[p]art of the forest" in Xiadun were submerged. *Id.* To help the villagers living in those and other areas resettle, the government offered them "an extremely low compensation arrangement." *Id.* at ¶ 5. But a "self-fattening policy" of bribery, corruption, and embezzlement kept the government from compensating these villagers until 2002, when the government started making "very small" compensation payments. *See id.* at ¶¶ 10–12.

As for the World Bank's role, Zhan alleges that the Bank was supposed to keep a "close watch" on the resettlement process but instead "turned a blind eye to the behavior of government officials and to the difficulty of the migrants on the ground in the Submersion District." *Id.* at ¶ 14. And because of the Bank's "protection," government corruption continues to stymie the resettled villagers from receiving compensation for their lost property. *Id.* at ¶ 15.

Zhan, proceeding *pro se*, purports to represent 252 Xiadun villagers who "did not receive any compensation for their lost land or houses." *Id.* at ¶ 9. Zhan filed the Complaint on July 2, 2019, seeking $12,332,500 to compensate for the villagers' lost homes, another $2,520,00 "to cover damages and other costs incurred by the plaintiffs as a result of this incident," and "all costs related to this lawsuit." *Id.* at ¶¶ 16–18. The World Bank moved to dismiss under Federal

Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons that follow, the Court will dismiss this case under Rule 12(b)(1). Because the Court lacks subject-matter jurisdiction, it will not consider the World Bank's Rule 12(b)(6) arguments.

## II. LEGAL STANDARD

A court facing with a Rule 12(b)(1) motion to dismiss must accept "all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation omitted). But "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint," and the court need not "accept plaintiff's legal conclusions." *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quotation omitted). Nor is the court "limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). It "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). And "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## III. ANALYSIS

Thanks to two Executive Orders, the World Bank's two constituent intuitions are "public international organizations entitled to the privileges, exemptions, and immunities conferred by the" International Organizations Immunities Act (IOIA). Exec Order No. 9,751, 11 Fed. Reg. 7,713 (July 13, 1946) (designating the IBRD); *see* Exec. Order No. 11,966, 42 Fed. Reg. 4,331

(Jan. 24, 1977) (designating the IDA). The IOIA provides that such organizations "shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments . . . ." 22 U.S.C. § 288a(b).

This immunity has two main exceptions. First, the IOIA limits this immunity "to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract." *Id.* And second, the Supreme Court held recently that the IOIA's reference to "same immunity" means the same immunity that foreign governments enjoy "at any given time," not the immunity they enjoyed when Congress passed the IOIA. *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 772 (2019). "Today, that means that the Foreign Sovereign Immunities Act" (FSIA)—which did not exist when Congress enacted the IOIA—"governs the immunity of international organizations." *Id.*

The World Bank is thus immune from suit unless an FSIA exception applies or the Bank expressly waived its immunity under the IOIA. Neither is present here.

*First*, no FSIA exception applies. It is the plaintiff's burden to establish subject-matter jurisdiction, yet Zhan does not identify a relevant FSIA exception. *See Hudes v. Aetna Life Ins. Co.*, 806 F. Supp. 2d 180, 186 (D.D.C. 2011). And in any event, no FSIA exception could apply. As explained below, the World Bank has not "waived its immunity" expressly, nor is there any plausible argument that the Bank waived its immunity implicitly. 28 U.S.C. § 1605(a)(1). This suit is not "based upon" an act connected to "a commercial activity of the foreign state . . . that causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The "gravamen" of this suit centers not on commercial activity but rather on the Chinese government's tortious actions in China and against Chinese citizens. *OBB Personenverkher AG v. Sachs*, 136 S. Ct. 390, 395–96 (2015). This case does not involve "rights in property taken in violation of international law."

4

28 U.S.C. § 1605(a)(3). It does not involve rights in any "property in the United States," let alone property "acquired by succession or gift" or "immovable property." 28 U.S.C. § 1605(a)(4). It does not involve money damages sought "for personal injury or death, or damage to or loss of property, occurring in the United States." 28 U.S.C. § 1605(a)(5). And it does not seek to enforce an arbitration agreement. *See* 28 U.S.C. § 1605(a)(6). The FSIA does not pierce immunity here.

*Second*, the World Bank has not expressly waived its immunity. Once again, Zhan does not argue as much. And that argument would fail regardless.

The World Bank has indeed waived certain immunity through its Articles of Agreements. Article VII, § 3 of the IBRD Articles of Agreement provides: "Actions may be brought against the Bank only in a court of competent jurisdiction in the territories of a member in which the Bank has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued guaranteed securities." The IDA Articles of Agreement contain an identical provision. *See* IDA Articles of Agreement, art. VIII, § 3.

But the D.C. Circuit has interpreted this provision to waive the Bank's immunity only "from suits by its debtors, creditors, bondholders, and those other potential plaintiffs to whom the Bank would have to subject itself to suit in order to achieve its chartered objectives." *Mendaro v. World Bank*, 717 F.2d 610, 615 (D.C. Cir. 1983). The *Mendaro* court reasoned that waiving immunity for debtors, creditors, and bondholders furthers the Bank's objectives because those parties are more likely to transact with the World Bank if judicial recourse is available when deals go sideways. *See id.* at 618. Thus, the "default rule" under *Mendaro* is that "the Bank's immunity should be construed as *not waived* unless the particular type of suit would further the Bank's objectives." *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335, 1338 (D.C. Cir.

1998), *abrogated on other grounds by Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759 (2019); *see also Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 278 (D.C. Cir. 2009) (describing the *Mendaro* rule as "a test to determine whether such charter terms waive a specific type of lawsuit").

A suit like this one would hinder the Bank, not help it. As the Bank correctly warns, exposure to liability for "decades-old loans where plaintiffs have been allegedly injured by the borrower—and not the actions of the World Bank—would severely interfere with and hamper the Bank's operations." Mot. to Dismiss at 10. Such exposure would also make certain loans riskier than they would otherwise be, reducing the Bank's financial capacity and willingness to lend. And even if the Bank could conceivably benefit from waiving immunity here, any limited benefit "would be substantially outweighed by the burdens caused by judicial scrutiny of the [Bank's] discretion to select and administer programs." *Mendaro*, 717 F. 2d at 617. "This clear lack of benefit—indeed, disadvantage—of a waiver of immunity . . . compels the conclusion that Section 3 of the agreement should not be construed to waive the Bank's immunity in this case." *Atkinson*, 156 F.3d at 1338–39.

## CONCLUSION

For these reasons, the Court grants the World Bank's motion to dismiss and dismisses this case without prejudice. A separate order accompanies this Memorandum Opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

November 20, 2019